# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

UP TO $106,000 IN FUNDS ON DEPOSIT IN BANK OF AMERICA ACCOUNT ENDING IN 5359, HELD IN THE NAME OF A BUSINESS HAVING THE INITIALS S.G. LLC

Case Number: 19-951 M (NJ)

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, John Milotzky, being duly sworn depose and say:

I am a Detective and Task Force Agent assigned to the United States Secret Service Milwaukee Resident Office Financial Crimes Task Force, and have reason to believe that in the Eastern District of Wisconsin there is now certain property, namely, up to $106,000 in funds on deposit in Bank of America account ending in 5359, held in the name of a business having the initials S.G. LLC, that is civilly forfeitable under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and criminally forfeitable under 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), as property that consists of, or is traceable to, proceeds of wire fraud committed in violation of 18 U.S.C. § 1343, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b)(2) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

    ✓ Continued on the attached sheet.

    ❑ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Sworn to before me, and subscribed in my presence

Signature of Affiant
John Milotzky, USSS

November 8, 2019 2:30 p.m.
Date and time issued

at Milwaukee, Wisconsin
City and State

Nancy Joseph, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, John Milotzky, having been duly sworn on oath, state as follows:

## Affiant's Background

1. I am a Detective with the City of Wauwatosa Police Department and have been employed with that department since 2001. I am currently assigned to the United States Secret Service Milwaukee Resident Office Financial Crimes Task Force ("MFCTF"). I was federally deputized on June 24, 2015. My duties as a Detective and Task Force Agent with the Secret Service include investigating financial crimes such as identity fraud, check fraud, credit card fraud, bank fraud, wire fraud, currency-counterfeiting offenses, and money laundering. During my employment with the Wauwatosa Police Department and the MFCTF, I have conducted several investigations that have resulted in seizures of criminally derived property, including monetary instruments and United States currency.

2. As a Detective and Task Force Agent, I have conducted investigations into wire fraud, money laundering, and other complex financial crimes. In the course of those investigations, I have used various investigative techniques, including conducting undercover operations, reviewing physical and electronic evidence, obtaining and reviewing financial records, and working with cooperating sources of information. In the course of those investigations, I have also become familiar with techniques that criminals use to conceal the nature, source, location, ownership, and control of proceeds of crime and to avoid detection by law enforcement of their underlying acts and money laundering activities.

3. Because I am submitting this affidavit for the limited purpose of establishing probable cause for the requested seizure warrant, I have not included in this affidavit every detail I know about this investigation. Rather, I have included only the information necessary to establish probable cause for the requested seizure warrant.

4. The facts set forth in this affidavit are based on my personal knowledge, including what I have learned through my training and experience as a law enforcement officer, my review of documents and other records obtained in the course of this investigation, and information I have obtained in the course of this investigation from witnesses having personal knowledge of the events and circumstances described herein and other law enforcement officers, all of whom I believe to be truthful and reliable.

## Property Sought to be Seized

5. I submit this affidavit in support of an application for a warrant to seize up to $106,000 in funds on deposit in Bank of America account ending in 5359 ("BOA 5359"), held in the name of a business having the initials S.G. LLC.

6. Based on the facts and circumstances set forth below, I submit that there exists probable cause to believe that up to $106,000 on deposit in BOA 5359 are:

a. Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses committed in violation of 18 U.S.C. § 1343;

b. Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1);

c. Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

d. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

**Facts Supporting Finding of Probable Cause for Issuance of Seizure Warrant**

**Common attributes Business Email Compromise (BEC) fraud schemes**

7. One common financial fraud scheme is known as a Business Email Compromise ("BEC") fraud scheme. In a BEC scheme, a fraudster gains unauthorized access to, or spoofs, the email address belonging to a customer or vendor of a business. The fraudster then sends an electronic communication—on the false pretense that the fraudster is the business's legitimate vendor or customer—instructing the business or one or more of its vendors, customers, or financial institutions to wire money to a bank account controlled by the fraudster.

8. In many cases, the person or persons who launder the proceeds of a BEC fraud scheme first open a bank account or accounts to receive those proceeds. Such a launderer often opens the bank account or accounts in the name of one or more fictitious businesses in order to conceal the fraudulent nature of the bank account from the bank and the victims who are duped into wiring money there.

9. Perpetrators of BEC fraud schemes sometimes also recruit witting or unwitting persons within the United States to open bank accounts that the perpetrators use to receive proceeds of the scam.

10. Not all such third-party account holders who receive BEC proceeds are ignorant, at least initially, as to the nature of the BEC fraud proceeds being deposited into their accounts. Some persons who open and use accounts to receive BEC fraud proceeds are witting money mules who understand the criminal nature of the funds they are receiving in the account from the outset. Other such account holders are put on notice of the facts that they are receiving, and helping launder, fraud proceeds during the course of receiving such fraud proceeds into their account. Thus, some persons who launder BEC fraud proceeds might begin as unwitting money mules but then progress to becoming witting money launderers.

2

**Ongoing investigation into BEC fraud scheme**

11. I am currently conducting an investigation that is focusing on a BEC fraud scheme in which an unknown suspect or suspects caused $106,000 to be wire transferred from a bank account located within the Eastern District of Wisconsin into BOA 5359, an account held in the name of a business having the initials S.G. LLC.

12. Bank of America records show that BOA 5359 was opened in the name of S.G. LLC and an individual having the initials P.S. S.G. LLC and P.S. are believed to be additional victims in the BEC scam.

13. The funds sought to be seized – which consist of up to $106,000 on deposit in BOA 5359 – are funds that were directly wire transferred into BOA 5359 from a victim business, having the initials GEH, based on misrepresentations, impersonations, and the use of interstate wires in connection with the BEC scam.

14. During May and June 2019, unknown suspects perpetrated this BEC fraud scheme on victim GEH, which is a business located in the Eastern District of Wisconsin. The fraudsters caused GEH to wire $106,000 into BOA 5359.

15. Specifically, the fraudster or fraudsters impersonated an individual having the initials T.H. – an account manager of a legitimate business having the initials A.M., which is a vendor of medical equipment – by using a spoofed email address: txx.hxxxxxxx@axxxx-mxxxxxx.com. The fraudster or fraudsters also impersonated Dr. F.D. – an actual medical service provider – and claimed to seek financing to purchase medical equipment through A.M.

16. The fraudster impersonating Dr. F.D. completed a financing application to purchase medical equipment from A.M. in the amount of $106,000. A fake A.M. invoice was sent to GEH to support the financing request. The invoice listed T.H. as A.M.'s account manager.

17. The fraudster then sent emails using the spoofed email address txx.hxxxxxxx@axxxx-mxxxxxx.com to an individual having the initials A.D., who works in Transaction Support for GEH. The fraudster provided ACH/Wire Payment instructions and requested that payment to A.M. for the medical equipment be wire transferred to BOA 5359.

18. On June 26, 2019, at the direction of the fraudster, GEH, from the Eastern District of Wisconsin, caused a wire transfer of $106,000 to be made from its Deutsche Bank account to BOA 5359.

19. In July 2019, Office Manager C.O., who works for the actual Dr. F.D., received a copy of the GEH invoice. C.O. contacted GEH and stated that their office never requested the financing or medical equipment.

20. GEH then contacted the actual T.H., account manager for A.M., the vendor of medical equipment. T.H. stated that his name and company have been used in similar fraud schemes.

3

21. Upon identifying the fraud, GEH contacted both Deutsche Bank and Bank of America. Deutsche Bank confirmed that the funds has been released to Bank of America. Bank of America subsequently put a hold on the funds.

22. I obtained records for BOA 5359 which show that on June 26, 2019, BOA 5359 received a wire transfer of $106,000 from GEH's Deutsche Bank account. The records also show that BOA 5359 has been open for several years for legitimate business purposes.

23. On November 6, 2019, I contacted Bank of America Investigations Group. They confirmed that the $106,000 was still being held but that the funds would not be released without a seizure warrant.

**Applicable Asset Forfeiture Provisions**

24. Under 18 U.S.C. § 984, a court may order the forfeiture of funds in a bank account into which monies subject to forfeiture have been deposited, without the need to trace the funds currently in the account to the specific deposits that are subject to forfeiture, up to the amount of the funds subject to forfeiture that have been deposited into the account within the past one-year period.

25. Section 984 (a) provides in part:

> (1) In any forfeiture action in rem in which the subject property is cash [or] funds deposited in an account in a financial institution
>
>> (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
>>
>> (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (c), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

26. 18 U.S.C. § 984(b) provides: "No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense."

27. Thus, under Section 984, a court may order the civil forfeiture of monies found in a bank account into which deposits of criminal proceeds subject to forfeiture had been made, up to the amount of the forfeitable deposits that have been made into the account within the prior one-year period, without the need for tracing the funds to be forfeited to any of the specific forfeitable deposits.

4

28.  I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after a restraining order or similar process has been issued to a financial institution, the funds sought to be restrained were not effectively restrained by the financial institution. In my judgment, a seizure warrant would be the most effective way to assure the availability of the monies sought to be seized for forfeiture by the accompanying seizure warrant.

## Conclusion

29.  Based on the facts and circumstances set forth in this affidavit, I submit that there exists probable cause to believe that up to $106,000 in funds on deposit in BOA 5359 are:

    a.    Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses, committed in violation of 18 U.S.C. § 1343;

    b.    Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1);

    c.    Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

    d.    Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

###